IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID H. FITZGERALD** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 13-6979** |
| **v.** | : | |
| | : | |
| **NATIONAL RAILROAD PASSENGER** | : | |
| **CORPORATION, d/b/a AMTRAK** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                      JULY 13, 2016

# MEMORANDUM OPINION

## INTRODUCTION

This is an employment, race/retaliation discrimination case. Plaintiff David H. Fitzgerald ("Plaintiff") alleges in his complaint that Defendant National Railroad Passenger Corporation ("Defendant"), his present employer, discriminated against him in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("§1981").[1] Presently before the Court are Defendant's motion for summary judgment, and Plaintiff's opposition thereto. The issues presented in the motion for summary judgment have been fully briefed by the parties and are ripe for disposition. For the reasons stated herein, the motion for summary judgment is granted.

## BACKGROUND

On December 2, 2013, Plaintiff filed a complaint against Defendant essentially averring that Defendant discriminated against him on the basis of his race when it denied him numerous promotions between 2009 and 2013. [ECF 1]. Plaintiff also asserts that Defendant denied him

---

[1] Plaintiff also asserted an employment discrimination claim under the Pennsylvania Human Relations Act (Count II). That claim, however, was dismissed by Order dated June 19, 2014. [ECF 13].

promotions in retaliation for purportedly calling Defendant's Ethics and Compliance helpline in mid-August 2012 and lodging a complaint.

On August 31, 2015, Defendant filed the instant motion for summary judgment and *a statement of material facts as to which there is no genuine dispute*. [ECF 34]. Plaintiff opposed the motion for summary judgment, [ECF 40], and also filed an answer to Defendant's statement of material facts, in which he admits many of the facts material to the parties' dispute. [ECF 40-3]. As is required at the summary judgment stage, this Court will consider all relevant facts in this matter in the light most favorable to the non-moving party, *i.e.*, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). These relevant facts are summarized as follows:[2]

> Plaintiff, an African American male, began working for Defendant in April 2009, as a Bridges and Building ("B&B") Mechanic. (SOF at ¶1). In the fall of 2009, Plaintiff became qualified to work as both a B&B Foreman and a B&B Inspector. (*Id.* at ¶3). From December 2009 through 2014, Plaintiff moved to different locations, including Philadelphia, Lancaster, and New York City, working as either a B&B Foreman or a B&B Inspector under various supervisors. (*Id.* at ¶6).

> Plaintiff is, and always has been throughout his employment with Defendant, a member of the Brotherhood of Maintenance of Way Employees ("BMWE"). The terms and conditions of Plaintiff's employment were and continue to be governed by Defendant's Collective Bargaining Agreement ("CBA") with BMWE. (*Id.* at ¶7). Plaintiff has never been a member of the American Railway and Airway Supervisors Association ("ARASA") union. (*Id.* at ¶8).

> From the fall of 2009 through June 2014, Plaintiff applied for forty-eight (48) promotions, for which he claims he was qualified, but not selected because of his race. (*Id.* at ¶10). During his deposition testimony, Plaintiff identified only Gary

---

[2]     Most of these facts, where undisputed and/or admitted by Plaintiff, are taken from Defendant's *reply to Plaintiff's response to Defendant's statement of material facts in support of its motions for summary judgment,* [ECF 49-1], ("SOF") which accurately provides, in collective fashion, Defendant's undisputed facts and Plaintiff's responses thereto. To the extent facts are disputed, such disputes are noted and, if material, construed in Plaintiff's favor.

Lindenmuth as a decision maker in the promotion process and who Plaintiff believed discriminated against him on the basis of his race. (*Id.* at ¶11). Plaintiff suggested there may be other discriminating officials in Defendant's HR department, but he could not identify them. (*Id.*). Mr. Lindenmuth testified that he interviewed, but did not select, Plaintiff for three Assistant Supervisor positions. (*Id.* at ¶12). According to Plaintiff, however, Mr. Lindenmuth filled eight positions for which Mr. Fitzgerald had applied, of which, four were filled with African American candidates, one was filled by an Hispanic; and the remaining three were filled by Caucasians. (*Id.*). Mr. Lindenmuth testified that he selected other candidates over Plaintiff because he found Plaintiff to be unqualified or not as qualified as the selected candidates. (*Id.* at ¶17). Plaintiff disputes that he was not as qualified as the selected candidates. Plaintiff admits, however, that he had no experience with budgeting in the engineering department, never planned capital construction projects, never closed out a capital construction project, and did not have electrical experience. (*Id.* at ¶¶18, 37).

In August 2011, Mr. Lindenmuth selected David Cooper (a Caucasian) to fill an Assistant Supervisor position in Defendant's Penn Station, in New York City. (*Id.* at ¶27). Sometime in 2012, Mr. Lindenmuth selected William Parker (an African American) for another Assistant Supervisor position at Penn Station. (*Id.* at ¶¶31, 34). In February 2014, Mr. Lindenmuth selected Tony McConeyhead (an African American) to fill another Assistant Supervisor position at Penn Station. (*Id.* at ¶38). Though disputed by Plaintiff, Mr. Lindenmuth testified that he selected each of these candidates over Plaintiff because they were the most qualified candidates. (*Id.* at ¶¶27, 36, 40).

The terms and conditions of each of the Assistant Supervisor positions that Plaintiff sought were governed by a collective bargaining agreement between Defendant and ARASA; and employees awarded positions covered by the ARASA agreement become members of the ARASA. (*Id.* at ¶¶29, 33, 39).

In mid-August 2012, Plaintiff called Defendant's Ethics and Compliance helpline and reported that he had applied to several positions, but that other allegedly less qualified employees had ultimately been hired for the positions. (*Id.* at ¶43). Plaintiff believed generally that "Management and Human Resources" were responsible for these decisions, but at the time of his helpline call, did not identify any protected category as a basis for his beliefs concerning allegedly unfair treatment. (*Id.* at ¶44). Mr.

Lindenmuth did not and does not know whether Plaintiff has complained to anyone at Defendant about race discrimination. (*Id.* at ¶45). Plaintiff did not complain to Mr. Lindenmuth about race discrimination. (*Id.*).

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56 governs the summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

Rule 56(c) provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a

genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Rule 56(c)(1)(A-B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

**DISCUSSION**

As stated, Plaintiff avers that Defendant unlawfully discriminated against him in violation of §1981 when Defendant denied Plaintiff various promotions for which he applied, allegedly because of his race and/or in retaliation for his complaints about racial discrimination. Defendant moves for summary judgment on each of Plaintiff's §1981 claims on the grounds that Plaintiff has not, and cannot establish: (1) a *prima facie* case of racial discrimination or retaliation; and (2) that Defendant's articulated, legitimate and non-discriminatory reasons for not selecting Plaintiff for the challenged promotions were a pretext for racial discrimination. Defendant also argues that to the extent Plaintiff asserts claims premised on promotions he was denied before December 2, 2011, such claims are barred by the two-year statute of limitations. Each of these arguments is addressed below.

***Plaintiff's Race Discrimination Claim***

Plaintiff's failure to promote claim asserted under §1981[3] is analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and its elements are generally identical to those of a Title VII employment discrimination claim. *See Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 218 (3d Cir. 2014); *Chandler v. Univ. of Pa.*, 927 F. Supp.2d 175, 179 (E.D. Pa. 2013) (noting that the legal standard applicable to employment discrimination claims asserted under §1981 and claims brought under Title VII are "equivalent"). Under the *McDonnell Douglas* framework, a plaintiff must first make a *prima facie* case of discrimination by producing evidence to show that the plaintiff: (1) is a member of a protected class; (2) is qualified for the job which he sought to attain; (3) suffered an adverse employment action; and (4) that the action occurred under circumstances that could give rise to an inference of discrimination or that similarly situated persons who are not members of a plaintiff's protected class were treated more favorably. *Walker*, 558 F. App'x at 218.

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant satisfies this phase, the burden shifts back to the plaintiff to prove that the legitimate reason(s) offered by the defendant are merely a pretext for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 804-05 (3d Cir. 1994). To make a showing of pretext, the plaintiff must provide evidence "from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that

---

[3]     In relevant part, §1981 provides: "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens . . . ."

an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. To meet this burden, the plaintiff must "present evidence contradicting the core facts put forth by Defendant, the employer, as the legitimate reasons for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). The plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765. *Fuentes* further requires the plaintiff to present evidence that suggests that unlawful discrimination was more likely than not a motivating or determining factor in the defendant's adverse employment actions. That is, the plaintiff must do more than show that the defendant's proffered reasons were wrong or mistaken. The plaintiff must demonstrate that the defendant acted with discriminatory animus. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001). The plaintiff can meet this burden by pointing to evidence "that the employer has previously discriminated against [him], that the employer has discriminated against other persons within the plaintiff's protected class or within another class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998). Where a plaintiff presents evidence of similarly situated non-class members to sustain his burden at the pretext stage, he must show with some specificity that the comparators were more favorably treated. *Id.* at 646.

### Plaintiff Fails to Make Prima Facie Claim

Plaintiff alleges that Defendant failed to promote him as many as 48 times between 2009 and June 2013, because of his race.[4] Defendant first argues that Plaintiff's discrimination claims must be dismissed because Plaintiff has failed to meet his summary judgment burden by presenting sufficient evidence to establish a *prima facie* claim of discrimination. This Court agrees.

A plaintiff makes out a *prima facie* claim by showing: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action was made "under circumstances that give rise to an inference of unlawful discrimination." *Waldron v. SL Indus., Ind.*, 56 F.3d 491, 494 (3d Cir. 1995) (citing *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). In a failure to promote case, such as this one, a plaintiff can establish the fourth element by demonstrating that a similarly situated individual from a non-protected class was promoted instead of plaintiff. *O'Neal v. Brownlee*, 2004 WL 2827052, at *6 (E.D. Pa. Dec. 9, 2004). A plaintiff's burden of establishing a *prima facie* case is not "onerous." *Burdine*, 450 U.S. at 253. However, a plaintiff must present evidence that "establish[es] some causal nexus between his membership in a protected class" and the adverse employment decision. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). Here, Defendant argues only that the fourth element is not met, *i.e.*, that Defendant's decision to not promote Plaintiff was made "under circumstances that give rise to an inference of unlawful discrimination."

---

[4]    In his complaint, Plaintiff specifically alleges that he applied for and was denied twenty-eight (28) positions. (*See* Complaint at ¶7). He also attaches an exhibit ("Exhibit A") that purportedly lists the positions for which he applied but was not selected. That list, however, contains thirty-four (34) positions. Though Plaintiff never amended his complaint, he now contends that he was denied as many as forty-eight (48) promotions for which he applied.